# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 28, 2010

## STATE OF TENNESSEE v. CHARLES PHILLIP MAXWELL

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2005-D-3130     Monte D. Watkins, Judge**

---

**No. M2009-00467-CCA-R3-CD - Filed March 16, 2011**

---

Defendant-Appellant, Charles Phillip Maxwell, was convicted by a Davidson County Criminal Court jury of driving on a suspended license, a Class B misdemeanor. The trial court imposed a six-month sentence, with Maxwell to serve forty-eight hours in jail prior to serving the remainder of his sentence on probation. In Maxwell's appeal, he argues that the trial court erred: (1) in failing to appoint counsel to represent him at trial; and (2) in orally denying his interlocutory appeal for the appointment of competent counsel. The State has conceded that the trial court committed reversible error in refusing to appoint counsel for Maxwell prior to trial. We reverse the trial court's judgment and remand for a new trial following the appointment of counsel.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court**
**Reversed and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Ashley D. Preston, Nashville, Tennessee, for the Defendant-Appellant, Charles Phillip Maxwell.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Kyle S. Anderson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This case concerns Maxwell's conviction for driving on a suspended license. Maxwell represented himself at trial, at the sentencing hearing, and at the motion for new trial hearing. Because we are reversing the judgment of the trial court and remanding for a

new trial following the appointment of counsel, we will not summarize the evidence presented at Maxwell's first trial.

Following the sentencing hearing, Maxwell filed a timely pro se motion for new trial, which the trial court denied by minute entry on January 30, 2009. See State v. Byington, 284 S.W.3d 220, 226 (Tenn. 2009) ("[A]lthough we hold that a minute entry is sufficient to confer appellate jurisdiction under Rule 4 in a criminal case, better practice dictates that the trial court enter a written order."). At the same time, the trial court granted Maxwell's motion for appellate counsel but failed to enter an order appointing a named attorney. Maxwell subsequently filed a timely notice of appeal pro se. He then filed a motion to this court requesting the appointment of appellate counsel. On September 25, 2009, this court filed an order requiring the clerk of the trial court to forward a copy of the trial court's order regarding the appointment of appellate counsel in this case within thirty days. The clerk subsequently forwarded the trial court's order, entered November 16, 2009, declaring Maxwell indigent and appointing specific appellate counsel in this case.

**ANALYSIS**

**I. Failure to Appoint Counsel.** Maxwell argues that the trial court committed reversible error in failing to appoint counsel to represent him at trial. In response, the State concedes that Maxwell, who was declared indigent, did not waive or forfeit his right to counsel. The State further concedes that Maxwell was entitled to the appointment of counsel and that the trial court's judgment should be reversed and remanded for a new trial following the appointment of counsel by the trial court. We agree with the State.

In this case, the record shows that at least two attorneys declined to be appointed to represent Maxwell due to difficulties with him. Subsequently, at Maxwell's request, the trial court appointed an out-of-state attorney, who failed to comply with Tennessee's pro hoc vice requirements. The trial court then appointed a local attorney as Maxwell's counsel but allowed that attorney to withdraw based on counsel's assertions that Maxwell refused to meet with him about the case without his "entourage" present, accused him of conspiring with the prosecution, questioned his ability to effectively represent him, and refused to listen to his legal advice. In a minute entry dated just over a month prior to trial, the trial court granted the local attorney's motion to withdraw and determined that Maxwell would proceed pro se.

Both the United States Constitution and the Tennessee Constitution guarantee to criminal defendants the right to legal counsel at trial. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. Although the Sixth Amendment guarantees an effective advocate for a defendant, it does not guarantee counsel preferred by a defendant. State v. Carruthers, 35 S.W.3d 516, 546 (Tenn. 2000) (citing Wheat v. U.S., 486 U.S. 153, 159 (1988)). Moreover, "[t]he right

of an accused to assistance of counsel . . . does not include the right to appointment of counsel of choice, or to special rapport, confidence, or even a meaningful relationship with appointed counsel. Id. (citing Morris v. Slappy, 461 U.S. 1, 13-14 (1983); U.S. v. Gallop, 838 F.2d 105, 107 (4th Cir. 1988); Siers v. Ryan, 773 F.2d 37, 44 (3d Cir. 1985); State v. Moody, 968 P.2d 578, 579 (Ariz. 1998); Snell v. State, 723 So.2d 105, 107 (Ala. Crim. App. 1998); Jones v. State, 449 So.2d 253, 258 (Fla. 1984); State v. Ryan, 444 N.W.2d 610, 625 (Neb. 1989)).

The question of whether a defendant has a federal constitutional right to counsel in a state court has often been considered by the United States Supreme Court. In Gideon v. Wainwright, 372 U.S. 335, 344-45 (1963), the Court overruled Betts v. Brady, 316 U.S. 455 (1942), and held that the Sixth Amendment as applicable to the states through the Fourteenth Amendment requires that an indigent defendant in a criminal prosecution in state court has the right to appointed counsel. In Argersinger v. Hamlin, 407 U.S. 25, 37 (1972), the Court held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." In Scott v. Illinois, 440 U.S. 367, 374 (1979), the Court clarified its ruling in Argersinger by holding that the Sixth and the Fourteenth Amendments require only that no indigent criminal defendant be sentenced to a period of imprisonment unless the State afforded him the right to assistance of appointed counsel.

Here, Maxwell was charged with driving on a suspended license, a Class B misdemeanor, in violation of Tennessee Code Annotated section 55-50-504(a)(1) (2003). Since Maxwell's license was suspended because of his failure to file proof of insurance with the Tennessee Department of Safety rather than because of a conviction for vehicular assault, vehicular homicide or driving while intoxicated which would have resulted in enhanced punishments under section 55-50-504(a)(1), he faced a sentence of not greater than six months, or a fine not to exceed $500, or both. See T.C.A. § 40-35-111(e)(2); see also Marie Hawks v. Michael C. Greene, No. M1999-02785-COA-R3-CV, 2001 WL 1613889, at *5 (Tenn. Ct. App. Dec. 18, 2001) (The General Assembly "distinguish[ed] the offense of driving on a license revoked for conviction of specific offenses, including driving under the influence, from the offense of driving on a license revoked for any other reason, through enacting enhanced punishments for the former[.]"). In Tennessee, defendants are appointed counsel in felony and misdemeanor cases where the defendant "is in jeopardy of incarceration" and the trial court had made a finding that the defendant is indigent. See Tenn. Sup. Ct. R. 13, Sec. 1(d)(1)(A). Because the court ordered Maxwell's incarceration when he had been found indigent, he was entitled to appointed counsel in this case.

The State concedes that Maxwell neither waived nor forfeited his right to counsel. In State v. Carruthers, 35 S.W.3d 516 (Tenn. 2000), the Tennessee Supreme Court

distinguished the concepts of waiver, implicit waiver, and forfeiture of a defendant's right to counsel. The court stated that "waiver of the right to counsel must be voluntary, knowing, and intelligent." Id. at 546 (citing Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938); State v. Small, 988 S.W.2d 671, 673 (Tenn. 1999)). In addition, waiver usually "occurs only after the trial judge advises a defendant of the dangers and disadvantages of self-representation and determines that the defendant 'knows what he is doing and his choice is made with eyes open.'" Id. (quoting Adams v. U.S. ex rel. McCann, 317 U.S. 269, 279 (1942)). In contrast, the court concluded that "an implicit waiver may appropriately be found, where . . . the record reflects that the trial court advises the defendant the right to counsel will be lost if the misconduct persists and generally explains the risks associated with self-representation." Id. at 549. In other words, the court distinguished the concept of explicit waiver, where a defendant waives his right to counsel using words, from the concept of implicit waiver, where a defendant waives his right to counsel through his conduct after he is warned by the trial court of the risks of proceeding pro se and that continued misconduct will result in self-representation. Id. at 546-49; see also State v. Holmes, 302 S.W.3d 831, 840 (Tenn. 2010). Finally, the court held that a defendant forfeits his right to counsel where he "engages in extremely serious misconduct . . . even though the defendant was not warned of the potential consequences of his or her actions or the risks associated with self-representation." Id. at 548 (citing U.S. v. Goldberg, 67 F.3d 1092, 1102 (3rd Cir. 1995); City of Tacoma v. Bishop, 920 P.2d 214, 218 (Wash. Ct. App. 1996)). The court added that "an indigent criminal defendant may implicitly waive or forfeit the right to counsel by utilizing that right to manipulate, delay, or disrupt trial proceedings." Id. at 549. It also acknowledged that "the distinction between [the concepts of implicit waiver and forfeiture] is slight[.]" Id.

In State v. Holmes, 302 S.W.3d at 838-39, the Tennessee Supreme Court reiterated that the right to counsel is not limitless:

> Although the right to counsel at trial is fundamental, it is not without limits. A criminal defendant may be deemed to have forfeited this right when he or she engages in "extremely serious misconduct," Carruthers, 35 S.W.3d at 548 (citing Goldberg, 67 F.3d at 1102), or engages in an "egregious manipulation" of the right to counsel "so as to delay, disrupt, or prevent the orderly administration of justice." Id. at 550.

The Holmes court emphasized that "[w]hether a defendant engages in some form of conduct that justifies a ruling of forfeiture may generally be determined only after an evidentiary hearing at which the defendant is present and permitted to testify." Id. at 838-39 (citing Commonwealth v. Means, 907 N.E.2d 646, 662 (Mass. 2009); King v. Superior Court, 132 Cal. Rptr. 2d 585, 598-99 (Cal. Ct. App. 2003)) (emphasis added) (internal footnote omitted). Moreover, the State has the burden of proving that the defendant committed the acts

justifying forfeiture.  Id. (citing Brewer v. Williams, 430 U.S. 387, 404 (1977)).  The court stated that "a criminal defendant's constitutional right to the assistance of counsel is so fundamental, particularly at trial, that only the most egregious misbehavior will support a forfeiture of that right without warning and an opportunity to conform his or her conduct to an appropriate standard."  Id. at 846 (internal footnote omitted).  Hence, a trial court's erroneous ruling which deprives a defendant of his right to counsel is per se reversible error. Id. at 848.  Finally, the court stated that, at the evidentiary hearing to determine whether the defendant engaged in "extremely serious misconduct" resulting in forfeiture of the right to counsel, the trial court should consider the following factors:

> (a) the stage of the proceedings;
>
> (b) whether the lawyer attacked is initial counsel or is a successor to other lawyers allowed to withdraw due to problems with the defendant;
>
> (c) whether the defendant had previously been warned about the potential loss of counsel as a result of misbehavior;
>
> (d) whether the defendant engaged in the misconduct deliberately and with the aim of disrupting, delaying, or otherwise manipulating the proceedings;
>
> (e) the degree of violence involved and the seriousness of any injury inflicted; and
>
> (f) whether measures short of forfeiture will be adequate to protect counsel.

Id.  If the trial court determines at the end of the evidentiary hearing that the defendant did not engage in "extremely serious misconduct" resulting in forfeiture of the right to counsel, then the trial court should:

> (1) appoint new counsel (assuming prior counsel withdrew);
>
> (2) inform the defendant of the potential consequences of future misbehavior and the risks of proceeding pro se; and
>
> (3) order such measures as are necessary to protect new counsel from future misbehavior by the defendant.

Id.

Here, the record does not show whether an evidentiary hearing took place prior to the court finding that Maxwell would proceed pro se and it provides no explanation for the court's final determination as to Maxwell's self-representation. Additionally, it does not show that the trial court warned Maxwell that if he continued to have unreasonable conflict with appointed counsel or used alleged conflicts with counsel to disrupt, delay, or manipulate the proceedings, he would have to proceed pro se. Finally, the record fails to show that the trial court warned Maxwell of the risks of self-representation. The record does show that the trial court denied Maxwell's motions to appoint counsel and denied his motion to continue his trial, stating:

> [Y]our position is that [appointed local counsel] did not want to proceed with your particular case and you didn't think he was competent to proceed with it, and [I find that appointed local counsel] is a very competent attorney. He was the second attorney who I had appointed to represent you. And because of the conflict between you and both counsel, they . . . were relieved from representing you.
>
> [T]he Court does not believe that it has to continue appointing you counsel if you can't get along with anyone. And for that reason, I decided that you could proceed pro se on this matter. . . .[I]t's the Court's position that we don't have to just continue to appoint counsel when the defendant does not care for legal counsel that has been appointed.
>
> I mean, we try to accommodate everyone, but there reaches a certain point where we have to just go ahead and move on. And in your particular case since this case has been around here for a substantial period of time, I decided that we needed to go forward with this matter.

Upon reviewing the record, we conclude that Maxwell's actions fell short of a forfeiture or implicit waiver of his right to counsel at trial. Because the procedure established in Holmes was not followed by the trial court in this case, we must reverse the trial court's judgment and remand for a new trial following the appointment of counsel. However, because the record establishes that many of Maxwell's conflicts with counsel had to do with counsel's refusal to present arguments submitted by Maxwell on the ground that they were frivolous, we encourage the trial court, if appropriate, to remind Maxwell that newly appointed counsel is specifically prohibited from submitting frivolous arguments to the court pursuant to Rule 3.1 of the Rules of Professional Conduct. See Tenn. Sup. Ct. R. 8, RPC 3.1 ("A lawyer shall not bring or defend or continue with the prosecution or defense of a proceeding, or assert or controvert or continue to assert or controvert an issue therein, unless after reasonable inquiry the lawyer has a basis for doing so that is not frivolous, which

includes a good faith argument for an extension, modification, or reversal of existing law."). In the event that future problems between Maxwell and appointed counsel occur in this case, the trial court should strictly adhere to the aforementioned procedure established in Holmes.

**II. Failure to Enter a Written Order Denying Interlocutory Appeal.** Maxwell also argues that the trial court erred in orally denying his interlocutory appeal for the appointment of competent counsel since Tennessee Rule of Appellate Procedure 9(b) requires entry of a written order. In response, the State contends that a written order was not required pursuant to Rule 9(b) because the trial court determined that Maxwell's issue was not appealable. The State further contends that the issue is moot, given its concession that the trial court erred in refusing to appoint counsel and that Maxwell's judgment should be reversed and remanded. We agree with the State.

Rule 9(b) sets out the procedure for filing an interlocutory appeal:

The party seeking an appeal must file and serve a motion requesting such relief within 30 days after the date of entry of the order appealed from. When the trial court is of the opinion that an order, not appealable as of right, is nonetheless appealable, the trial court shall state in writing the reasons for its opinion. The trial court's statement of reasons shall specify: (1) the legal criteria making the order appealable, as provided in subdivision (a) of this rule; (2) the factors leading the trial court to the opinion those criteria are satisfied; and (3) any other factors leading the trial court to exercise its discretion in favor of permitting an appeal. The appellate court may thereupon in its discretion allow an appeal from the order.

Tenn. R. App. P. 9(b) (emphasis added). Here, Maxwell filed his interlocutory appeal on August 25, 2008. We agree with the State that the record shows that the trial court determined that Maxwell's issue was not appealable. Nevertheless, we decline to address this issue because Maxwell has proceeded on appeal pursuant to Rule 3 and we have already reversed the trial court's judgment and remanded the case for a new trial following the appointment of counsel.

_____
CAMILLE R. McMULLEN, JUDGE